**EXHIBIT B**



**FILED**

AUG 04 2021

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: W. Simmons, Deputy

Theodore L. Senet (CSB # 82788)
tsenet@gibbsgiden.com
Richard Wittbrodt, Esq. (CSB # 138829)
rwittbrodt@gibbsgiden.com
Melissa L. Griffin, Esq. (CSB # 323699)
mgriffin@gibbsgiden.com
**GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP**
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
Telephone: (310) 552-3400
Facsimile: (310) 861-5422
(2150.051)

Attorneys for Plaintiff SCHUFF STEEL COMPANY, a Delaware corporation

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF MARIN

| | |
|---|---|
| SCHUFF STEEL COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANZ GLOBAL RISKS U.S. INSURANCE COMPANY, an Illinois insurance company, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania insurance company; and DOES 1-50, inclusive<br><br>Defendants. | Case No.: CIV 2102494<br><br>[Unlimited Jurisdiction]<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br>(Request For Stay Pending Appraisal) |

Plaintiff complains of Defendants and alleges as follows:

### GENERAL ALLEGATIONS

Plaintiff Schuff Steel Company ("Schuff" or "Plaintiff") for its complaint against Defendants Allianz Global Risks U.S. Insurance Company ("Allianz") and National Union Fire Insurance Company of Pittsburgh, PA (collectively the "Insurers" or "Defendants"), alleges as follows:

**SUMMONS ISSUED**

---

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF 2577804.2

1. At all times herein mentioned, Schuff was and is a corporation duly organized and existing under the laws of the State of Delaware, authorized to conduct business in the State of California.

2. Schuff is informed and believes and based thereon alleges that Allianz is an insurance company organized under the laws of the State of Illinois, which is engaged in, among other things, the business of selling policies of insurance, including in the State of California.

3. Schuff is informed and believes and based thereon alleges that National Union is an insurance company organized under the laws of the State of Pennsylvania, which is engaged in, among other things, the business of selling policies of insurance, including in the State of California.

4. Defendants DOES 1 through 50, inclusive, are sued herein under fictitious names, their true names and capacities being unknown to Plaintiff. Plaintiff will ask leave of Court to amend this Complaint by inserting their true names and capacities in the place and stead of said fictitious names when the same have been ascertained.

5. Schuff is informed and believes and based thereon alleges that each of the above-mentioned defendants is responsible for the acts and occurrences herein alleged, whether such acts and occurrences were committed intentionally, negligently, recklessly, or otherwise, and that each defendant is liable to Plaintiff for the damages suffered by Plaintiff.

6. Schuff is informed and believes and based thereon alleges that at all times herein mentioned, each of the defendants was the agent, servant and/or employee of the remaining defendants, and, at all times herein mentioned, was acting within the course and scope of said agency and/or employment.

7. Plaintiff is informed and believes and based upon such information and belief alleges that venue is proper in the County of Marin.

8. Marin Healthcare District, as Owner, retained McCarthy Building Companies, Inc. ("McCarthy"), as general contractor, to design and construct a new hospital building on a project known as the Hospital Replacement Building Project in Greenbrae, California (the

"Project"). McCarthy retained Schuff to perform certain structural steel fabrication and erection for the Project.

9. Plaintiff is informed and believes that McCarthy retained directly or indirectly various subcontractors, engineers, consultants, and inspectors, including Consolidated Engineering Laboratories ("CEL"). CEL was retained to inspect various areas of the Project and to perform off-site and on-site inspections of the structural steel fabrication and erection on the Project.

10. In 2016, the Insurers each issued a Contractors Installation/Builders Risk Form Policy, National Union policy number 020715626/Allianz policy number ATO 3016497 (the "Policies"), under which Schuff was and is an Additional Insured. The Policies provided builders risk property insurance coverage for "Insured Property" at the Project, initially up to a total project value in excess of $293 million (increased periodically via endorsements to the Policies) during the original Period of Insurance from April 1, 2016 to August 1, 2019 (later extended via endorsements to the Policies).

11. The Policies' "Insuring Agreement" "insures against all risks of direct physical loss of or direct physical damage to Insured property during the Period of Insurance while such Insured Property is at the construction site, stored off-site, or in the course of transit within" the Continental United States and Canada, subject to any applicable exclusions. The Policies define "Insured Property" in pertinent part as "all materials, equipment, machinery, and supplies . . . to be used in or incidental to the fabrication, erection, or construction of the Insured Property, provided the value of the Insured property has been included in the estimated Total Project Value shown in the Schedule."

12. For an additional premium, the Policies included "Expand[ed] Defects coverage (LEG3]" commonly known a LEG 3 coverage that modified the exclusion for defective design or workmanship to limit the exclusion to those losses due to defective design or workmanship to "cost incurred to improve the original material workmanship design plan or specification." Accordingly, damage resulting from defective design or workmanship, not excluded under the Expanded Defects coverage provision, was covered.

13. During the Policy Period and the course of scheduled construction, the project inspectors employed by CEL inspected and approved various steel components in Schuff's fabrication shop, located in Stockton, California. The inspected and approved components were made of steel owned and paid for by McCarthy or the Owner, and stored at Plaintiff's fabrication facility. After the inspected and approved steel components were shipped to the Project site and erected in the field, CEL inspectors required that certain areas of the Project and some of the erected steel components be disassembled, re-inspected, and in some cases, modified, repaired, or reassembled, which required cutting and welding, thereby damaging the building structure, steel components, and other Insured Property. As a result of the inspectors' defective inspections, the Insured Property at the Project sustained direct physical loss of and direct physical damage to Insured Property, including but not limited to damage to the partially constructed concrete and steel structure, structural steel beams, columns, connections, related components, and other work ("Direct Physical Loss/Damage").

14. After the Direct Physical Loss/Damage to the Insured Property, McCarthy continued to pay Schuff for the work on the Project, with the exception of partial retention and for certain additional work on the Project. In the summer of 2019, McCarthy continued to issue change orders and make payment for extra work. In the fall of 2019, Schuff believed it was entitled to compensation under its subcontract for extra work and the cost of the repairs to the Insured Property that resulted from the inconsistent inspections and improper work by CEL and other agents of McCarthy and the Owner.

15. On or about October 29, 2019, McCarthy requested Schuff pay McCarthy for the loss and damage to the Insured Property, including the cost of modification to the structure, the steel components, and resultant delays of the Project. McCarthy requested that Schuff notify the Insurers of the loss. Until this time, Schuff was unaware of any covered loss as it expected to be compensated under the subcontract as a result of the damage incurred due to the inconsistent inspections, disassembly, repair, and additional costs related to the damage to the Insured Property.

///

16. Prior to the October 29, 2019, request from McCarthy, the causes of the loss, extent of the damage to the Insured Property, and the losses sustained by Schuff were not fully known, nor reasonably discoverable.

17. Schuff is informed and believes that the Insurers never provided Schuff with the copies of the Policies. On or about November 10, 2019, Schuff first received copies of the Policies from McCarthy. Prior to the receipt of the copies of the Policies, Schuff did not have knowledge of the specific terms, conditions, and limitations of the Policies.

18. On or about January 23, 2020, Schuff gave notice of a direct physical loss to the Insured Property under the National Union policy. At the time of the initial notice, the causes, extent, and amount of the loss alleged above were not fully known.

19. By letter dated February 19, 2020, the Insurers acknowledged the notice and that: (1) the full extent of the loss was not known; (2) the Policies provided Expanded Defects LEG 3 coverage; and (3) the time that shall elapse while the Insurers are investigating the claim will not count against the suit limitation period.

20. After giving notice to the Insurers, Schuff retained professionals to assist with determining the cause, extent, and amount of the loss. By subsequent investigation, it was determined that the damage to the building and its components as alleged above was the result of direct physical loss of and/or direct physical damage to Insured Property that falls within the Policies' Insuring Agreement and was not subject to the exclusions in the Policies. After months of investigation, Schuff submitted a claim on or about December 11, 2020, for Policy benefits due as a result of the foregoing (the "Schuff Claim").

21. The Schuff Claim includes, among other things, the loss and/or damage Schuff sustained as a result of the Direct Physical Loss/Damage, including cost of repairs, impacts, and extra expense as defined under the Policies. The Insurers were timely given notice that loss or damage caused by the Direct Physical Loss/Damage had occurred within a short period after Schuff discovered, or could reasonably have discovered, the loss or damage sustained underlying the Schuff Claim.

///

22. Schuff has complied fully with all of the applicable terms and conditions under the Policies, except for those prevented or excused by the Defendants.

23. Schuff timely and properly notified the Insurers of the loss and/or damage sustained, and any delays associated with giving notice of the Schuff Claim were due to the fact that Schuff did not and could not reasonably discover the covered loss until late 2019.

24. Schuff made demand for payment of the Schuff Claim to the Insurers in a timely and appropriate manner, and timely provided the Insurers with supporting documents and information necessary to complete their respective evaluation of the Schuff Claim.

25. After several months of additional investigation of the Schuff Claim, the Insurers ultimately denied the claim on or about June 7, 2021.

## FIRST CAUSE OF ACTION

### (For Breach of Contract Against the Insurers and DOES 1 through 50, inclusive)

26. Schuff incorporates by reference the allegations contained in Paragraphs 1 through 25, as though set forth fully herein.

27. The Policies have been in full force and effect at all relevant times, insuring Schuff for the damage caused to the Project.

28. Schuff timely submitted the Schuff Claim to the Insurers on the grounds that the loss or damage sustained by Schuff as a result of the Direct Physical Loss/Damage is covered under the Policies.

29. Schuff has performed all conditions, terms, and covenants it was required to perform under the Policies, except for those obligations which, because of the breach by the Insurers of their obligations, it has been excused or prevented from performing.

30. The Policies obligate the Insurers to pay the loss or damage sustained by Schuff as a result of the Direct Physical Loss/Damage.

31. The Insurers' denied coverage for the damage to the Project and to pay Schuff for the loss or damage it sustained as a result of the Direct Physical Loss/Damage is a material breach of its obligations under the Policies.

32. Pursuant to the terms of the Policies, on June 18, 2021, Schuff demanded and hereby demands the initiation of the appraisal process to appraise the loss and damage pursuant to the terms of the Policies. The Insurers have failed to submit the loss to appraisal as required under the Policies.

33. As a direct and proximate result of the Insurers' breach of contract, Schuff has been damaged in an amount to be determined at trial, but within the jurisdictional limits of the Court.

## SECOND CAUSE OF ACTION

### (For Declaratory Relief as Against the Insurers and DOES 1 through 50, inclusive)

34. Schuff incorporates by reference the allegations contained in Paragraphs 1 through 24, and Paragraphs 27 through 32, inclusive, as though set forth fully herein.

35. On or about July 11, 2021, McCarthy filed a complaint against the Insurers in the above-referenced County. Schuff contends that McCarthy's claim against the Insurers should be paid, that such losses are covered under the Policies, and that McCarthy's claims were due to the covered loss caused by CEL and other parties employed by McCarthy and/or the Owner.

36. The Insurers and DOES 1 through 50, inclusive, are liable under the Policies for the damage and losses alleged herein.

37. An actual controversy has arisen and now exists between Schuff and the Insurers regarding the monies owed to McCarthy, Schuff and others, and Schuff's right to payment and indemnity under the Policies in connection to the loss incurred by the insureds on the Project.

38. A judicial determination of these issues and of the respective duties of Schuff and the Insurers is necessary and appropriate at this time.

///
///
///

## PRAYER FOR RELIEF

**WHEREFORE**, Schuff prays for judgment as follows:

### ON THE FIRST CAUSE OF ACTION

1. For an order compelling the Insurers to submit the amount of the loss for determination by appraisal in accordance with the Policies.

2. For damages according to proof at the time of trial, plus interest.

### ON THE SECOND CAUSE OF ACTION

1. For a declaration by the Court as to the right, duties, obligations, and liabilities of each of the parties under the Policies.

### ON ALL CAUSES OF ACTION

1. For costs of suit incurred herein; and

2. For such other and further relief as the Court deems just and proper.

DATED: August 3, 2021        Respectfully submitted,

GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP

By: _____
Theodore L. Senet, Esq.
Richard J. Wittbrodt, Esq.
Melissa L. Griffin, Esq.
Attorneys for Plaintiff, SCHUFF STEEL COMPANY